IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| TRI INVESTMENTS, INC. § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 5:18-cv-00116 |
| § | |
| UNITED FIRE & CASUALTY COMPANY § | |
| *Defendant.* § | |

### DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS
### STEPHEN L. STRZELEC, ROBERT HINOJOSA, AND THOMAS J. IRMITER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant United Fire & Casualty Company ("United Fire" herein) and files this its Motion to Exclude Testimony of Plaintiff's Experts Stephen L. Strzelec, Robert Hinojosa, and Thomas Irmiter and, in support thereof, would respectfully show unto this Court the following[1]:

### SUMMARY OF THE ARGUMENT

The testimony of Stephen L. Strzelec on the issue of claims handling / bad faith is conclusory and invades the province of the fact finder or the Court. Strzelec reaches his opinions by subjectively weighing the merits of competing engineering reports although Strzelec is not an engineer and does not demonstrate that he is experienced in assessing hail impacts to metal roofing and cosmetic damage exclusions. Further, the report of Strzelec was not timely filed as required under FRCP 26(a) and this Court's Scheduling Order and was made without leave of Court.

---

[1] At the time of the filing of this Motion, Defendant's Opposed Motion to Compel Appraisal and Abate Case Pending Completion of Appraisal (Document No. 30) was pending ruling by the Court. Due to the deadline for filing Dispositive Motions and Motions to Exclude or Limit Expert Testimony set by the Court, Defendant files the instant motion at this time in order to meet the deadline in the Scheduling Order. (Document No. 13). Defendant does not intend this Motion to substantially invoke the jurisdiction of the Court to the exclusion of appraisal.

(Document No. 13).

The testimony of Robert Hinojosa and Thomas Irmiter will confuse the jury and is prejudicial, as Hinojosa and Irmiter base their conclusions on a definition of "damage" that is contrary to the insurance policy at issue. Further, Hinojosa's and Irmiter' s conclusions and opinions on hail "damage" must be excluded because they are conclusory and lack any scientific basis.

## STATEMENT OF FACTS

1.	Defendant issued insurance policy number 85318342 with effective dates of April 15, 2017 to April 15, 2018 (the "Policy") (Document No. 4-1). The Policy provides insurance coverage, subject to the Policy's terms and conditions, for covered losses occurring to two properties: 442 Logistics and 301 Flecha Ln. in Laredo, Texas occurring during the policy period. *Id*.

2.	The Policy contains endorsement CP 70 66 03 05 titled "Exclusion – Cosmetic or Appearance Loss or Damage" which states,

**EXCLUSION – COSMETIC OR APPEARANCE LOSS OR DAMAGE**
**CP 70 66 03 05**

\* \* \*

The following language is added to B. EXCLUSIONS in the Causes of Loss – Special Form:

**5.	Cosmetic or Appearance Loss or Damage**

We will not pay for loss or damage caused by the peril of hail that alters the physical appearance of any part of any roof covering made of metal but does not result in damage that allows the penetration of water through the roof covering **or does not result in the failure of the roof covering to perform its intended function** to keep out elements over an extended period of time. This exclusion applies to roof coverings including the roofing material exposed to weather, its underlayment applied for moisture protection and all flashings required in application of the roof covering.

> Hail damage to roof coverings that results in damage that will allow the penetration of water through the roof covering **or that results in the failure of the roof covering to perform its intended function** to keep out elements over an extended period of time is not subject to this exclusion.

Document 4-1 at p. 42 of 80 (hereafter the "Cosmetic Damage Exclusion").

3. Plaintiff alleges that both properties sustained covered losses during a wind and hail event occurring on May 21, 2017 (Document No. 1). After investigating Plaintiff's insurance claim, United Fire paid insurance benefits totaling approximately $32,000.00 (after applicable deductibles) for covered damage to the properties. The remainder of Plaintiff's claim, specifically damage to the metal roof panels, was denied as excluded under various Policy exclusions, including the Cosmetic Damage Exclusion.

4. On May 3, 2019, Plaintiff designated Steve Strzelec as its claims handling (bad faith) expert. (Document No. 29). However, at that time Plaintiff did not produce any report by Strzelec. Plaintiff produced a report of Strzelec on June 24, 2019, seven weeks after the deadline and without leave of Court. Exhibit "A".

5. Additionally, on May 3, 2019, Plaintiff designated Robert Hinojosa and Thomas J. Irmiter as causation experts. (Document No. 29). Hinojosa and Irmiter signed joint reports as to causation, one report for each of the two properties at issue. Exhibit "B" and Exhibit "C".

## ARGUMENT AND AUTHORITIES

6. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. This rule provides that a witness must possess sufficient knowledge, skill, experience, training or education in order to provide expert testimony. Fed. R. Evid. 702. The testimony must (1) be based upon sufficient facts or data, (2) must be the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the

case. *Id.*

7. Rule 702 has been amended to incorporate the principles articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Following *Daubert* and its progeny, trial courts act as gatekeepers, overseeing the admission of scientific and nonscientific expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (*Daubert*-imposed basic gatekeeping obligation applies to all expert testimony). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. In carrying out this task, district courts have broad latitude in weighing the reliability of expert testimony for admissibility. See *Kumho Tire Co.*, 526 U.S. at 152 (recognizing trial court must have considerable leeway in determining admissibility of expert testimony). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. The party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method and are reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

8. Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Burleson v.* Texas *Dep't of Crim. Justice*, 393 F.3d 577, 584 (5th Cir. 2004). *Daubert* provides the analytical framework for determining whether expert testimony is admissible. *See Kumho Tire Co.*, 526 U.S. at 141. This *Daubert* framework includes many factors that a court can

4

employ to determine the admissibility of expert testimony, including, but not limited to, whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and, (4) is generally accepted in the relevant scientific community. *Id*. at 593-94. However, not every *Daubert* factor will be applicable in every situation, and a court has discretion to consider other factors it deems relevant. *See Kumho Tire*, 526 U.S. at 151. Echoing the Supreme Court's position, the Fifth Circuit has explained that, "[i]n the vast majority of cases, the district court first should decide whether the factors mentioned in *Daubert* are appropriate." *Black v. Food Lion, Inc.*, 171 F.3d 308, 311-12 (5th Cir.1999). Whether *Daubert's* suggested indicia of reliability apply to any given testimony is a fact-specific inquiry dependent on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000).

9. Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert conclusions themselves. *See Daubert*, 509 U.S. at 594-95. The focus must be solely on principles and methodology rather than the conclusions generated. *Id*. at 595. However, conclusions and methodology are not entirely distinct from one another. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). Nothing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *Id*. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *Id*.

10. Additionally, while an expert witness is permitted to provide an opinion on an "ultimate issue" of fact under Rule 704, if he is qualified to do so, he is not permitted to make

credibility determinations or offer legal conclusions. *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, 2019 U.S. Dist. LEXIS 55052 (N.D. Tex. March 31, 2019) (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law . . . nor, may an expert go beyond the scope of his expertise in giving his opinion."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983) ("Fed. R. Evid. 704 abolished the per se rule against testimony regarding ultimate issues of fact [but] does not open the door to all opinions.")).

**Motion to Exclude Stephen L. Strzelec**

- **Motion to Exclude Pursuant to Rule 37(c)**

11. As an initial matter, United Fire moves to exclude the testimony and opinions of Stephen L. Strzelec on the grounds that Plaintiff failed to comply with this Court's Scheduling Order by failing to serve Strzelec's expert report at the deadline. Instead, Plaintiff served Strzelec's report over seven weeks late and without leave of Court.

12. Federal Rule of Civil Procedure 26(a)(2)(B) provides: "Unless otherwise stipulated or ordered by the court, . . . [the disclosure of expert testimony] must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them." *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, 2019 U.S. Dist. LEXIS at *14. If a witness is not required to provide a written expert report, Rule 26(a)(2)(C) provides that a party's disclosure must state: "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," and include "a summary of the facts and opinions to which the witness is expected to testify." *Id*. Any opinions that are not properly disclosed in accordance with the Rule 26(a) may be excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *Id*. Exclusion, however, is not mandatory or automatic but, instead, a matter of the court's discretion. *Id*. (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). In

6

deciding whether to exercise its discretion and exclude an expert witness for failure to comply with Rule 26(a)(2), the court is guided by four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Id*. at *14-15 (citing *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).[2]

- **Importance**

13. As far as the importance of Strzelec's testimony, his testimony is more in the form of legal conclusions which are not an appropriate topic to which an expert may testify. *See State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, 2019 U.S. Dist. LEXIS at *65. Such invades the province of jurors whose role it is to decide fact issues (to the extent there is one on the issue of bad faith) based on the evidence. *Id.* at *66. (citing *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) ("[W]hether an insurer has breached its duty of good faith and fair dealing is a fact issue.") (and citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 and 81 (Tex. 1997) (Enoch, J., concurring); *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 71 (5th Cir. 2011) ("The 'Texas Constitution confers an exceptionally broad jury trial right upon litigants." *Giles*, 950 S.W.2d at 56. Nevertheless, the plaintiff still must show there is a material issue of fact about whether the insurer denied coverage despite an indication that coverage had become "reasonably clear" or the insurer acted unreasonably in failing to investigate."); *cf. United States Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997) (when the summary judgment proof "conclusively establishe[s]" that there is "no more than a good faith dispute" between the parties concerning the insurer's liability, bad faith is not shown, the bad faith claim may be decided as a matter of law)).

---

[2] Plaintiff has not sought leave of Court to serve Strzelec's report after the Court set deadline. However, presumably, Plaintiff will now seek leave of Court to late serve Strzelec's report.

14. Additionally, contemporaneously herewith, United Fire has moved for summary judgment on Plaintiff's claims, including Plaintiff's bad faith and Texas Insurance Code claims. Obviously, if the Court grants summary judgment on behalf of United Fire, Strzelec's opinions will not be relevant to any trial of this matter.

15. To the extent Plaintiff contends that Strzelec's testimony is important for other reasons, United Fire will respond to Plaintiff's arguments in a reply brief.

- **Prejudice**

16. Plaintiff did not provide Strzelec's report until three weeks after Defendant designated its experts and produced reports, including the report of its bad faith / claims handling expert Thomas Veitch. If the Court allows the Strzelec report, United Fire will need to seek leave to amend Veitch's report as well as incur additional costs associated with a supplemental report from Mr. Veitch. All of this will have to occur past the deadlines in the Scheduling Order and with a looming pre-trial deadline of October 15, 2019 for filing Defendant's pretrial materials (Track B).

17. Further, Strzelec's report is so vague and conclusory that to ferret out the totality of his opinions and the basis therefore is going to require a deposition at Defendant's expense. Strzelec charges $450.00 per hour for deposition testimony and he requires an $1800 deposit in advance for a half-day deposition and a $3600 deposit in advance for a full-day deposition. Exhibit "A" at TRI INV 000971. Strzelec resides in Sammamish, Washington which means either he travels to Texas, at Defendant's expense, or the lawyers for the parties will have to incur the time and expense to travel to Sammamish, Washington to take Strzelec's oral deposition. Either way, United Fire will have to incur more costs to find out the extent of Strzelec's opinions in this matter.

18. Litigants in federal court are entitled to the disclosures that are required to be made

8

under Rule 26(a)(2)(B), and it is not incumbent on the opposing party to investigate or ferret out that information as best as it can through deposition or other means of discovery at the expense of its client. *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, 2019 U.S. Dist. LEXIS at *78.

- **Availability of a continuance to cure prejudice**

19. Although there is no trial setting at this time, there are other pretrial deadlines that likely will need to be changed if Strzelec's opinions are permitted. The discovery deadline and the Track B deadline will likely be impacted by permitting the late report of Strzelec.

20. Regardless, it is not incumbent on the court to give "ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("affirming denial of request to modify scheduling order to cure deficiencies in expert's report and noting that "[d]istrict judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.") (citing *Turnage v. General Electric Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992)).

- **Explanation for failure to disclose**

21. As Plaintiff has not sought leave to amend, it is not clear why Plaintiff will contend it failed to disclose Strzelec's opinions in the form of a written report. Defendant believes Plaintiff may contend, as set forth in its designation, that he needed claim file documents from Defendant. (Document 29 at p.5). However, Defendant did produce its claim file including claim notes, reports and correspondence in response to Plaintiff's Request for Production. Certain documents were withheld under relevance objections and claims of privilege, but the substantive documents were produced prior to the expert designation deadline. In his report, in material part, Strzelec's cites to those portions of the claim file that were produced by United Fire in response to Requests for Production. Additionally, Strzelec cites to reports prepared by Plaintiff's representatives so

presumably he had access to those documents prior to the expert deadline and was not relying on United Fire for those documents (which were also produced as part of United Fire's claim file).

22. Finally, it is not clear why Strzelec did not prepare a report based on the documents and information he had access to prior to the deadline and supplement his report at a later time in the event additional information was produced or compelled to be produced.

23. As with the "importance of the testimony" element, discussed above, to the extent Plaintiff provides information concerning the failure to disclose Strzelec's opinions by the deadline, United Fire will respond to Plaintiff's arguments in a reply brief.

- **Motion to Exclude Stephen L. Strzelec's Opinions Pursuant to Rule 702**

    - **Conclusory Opinions and no engineering background**

24. Strzelec expresses two opinions in his report. First, that United Fire's denial occurred prior to the completion of a reasonable investigation, therefore it was based on assumptions, speculation and conjecture. Second, Strzelec concludes that United Fire's denial was incomplete, improper and lacked specificity.

25. However, Strzelec does not state why United Fire's investigation was speculative, based on assumptions and conjecture. Nor does Strzelec causally connect United Fire's allegedly improper investigation with any injury or damage to Plaintiff. Further, Strzelec does not state how United Fire's conclusions would have been different had a "proper" investigation occurred, which is required for liability under 541 of the Texas Insurance Code.

26. Additionally, although Strzelec is critic of the engineering report of BSC Forensics, he is not an engineer qualified to weigh or evaluate the merits of a sealed engineering report based on a field inspection. Strzelec's report quotes extensively from the engineering report of BSC, retained by United Fire, and the Plaintiff's engineering reports of David Day (CASA Engineering)

("CASA") and Robert Hinojosa (Forensic Building Science, Inc.) ("FBS"). However, Strzelec takes issue with the BSC Report but says nothing about the merits of the CASA or FBS reports or how or why the Plaintiff's engineering reports impact or disprove the BSC report. That is, Strzelec concludes the BSC report is flawed but offers no opinion as to how the CASA or FBS reports are more accurate, complete, factual, or scientific.[3]

27. Strzelec is critical of the engineer hired by United Fire inferring that he is biased because, "this engineer has considerable expertise inspecting losses for insurance carriers" and "the engineering is attempting to provide a coverage opinion to assist United Fire in their denial". Exhibit "A" at TRI INV000943-944. Strzelec does not proffer any reason or facts for these statements other than citing some excerpts from the BSC report and concluding BSC is biased in favor of United Fire.

- **No hail or cosmetic damage experience**

28. The claim at issue involves hail impacts to a metal roof under a policy with a Cosmetic Damage Exclusion. However, nothing in Strzelec's report or experience shows that he is familiar with hail claims, the application of cosmetic damage exclusions, and the determination of whether or not the hail caused covered damage. Strzelec's resume shows that his background is in automobile and fire claims. Exhibit "A" at TRI INV000961-962. Nor does Strzelec state he has experience in hail claims and cosmetic damage exclusions and the particularities specific to claims of that nature. This is important as Strzelec is critical of United Fire's investigation calling it incomplete and based on "assumptions, speculation and conjecture." Yet, because Strzelec does not have any experience adjusting hail claims and cosmetic damage exclusions, he is not qualified

---

[3] Strzelec's opinion proves the point that United Fire's investigation and decision was reasonable as it relied upon an outside engineer's report that merely concluded differently than the Plaintiff's engineers.

to state how United Fire's claim investigation was deficient as he doesn't know what information is relevant and material to a claim for hail damage to a metal roof.

- **Strzelec's opinion invades purview of fact finder and court**

29. While an expert witness is permitted to provide an opinion on an "ultimate issue" of fact under Rule 704, if he is qualified to do so, he is not permitted to make credibility determinations or offer legal conclusions. *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, 2019 U.S. Dist. LEXIS at *83 (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) and *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983).

30. Underlying Strzelec's opinion is his contention that the engineering reports of the Plaintiff's engineers are more credible than the BSC reports and, as a result, United Fire's investigation was in bad faith. This is the issue that a jury would have to decide were the issue presented to a jury. This is not the realm of expert testimony.

31. Further, as argued above, Strzelec is not qualified to make such a determination as he is not an engineer nor does he have any experience in investigating hail claims involving metal roofs and cosmetic damage exclusions.

32. Accordingly, for these reasons, United Fire respectfully moves this Court to exclude the testimony of Stephen L. Strzelec.

**Motion to Exclude Robert Hinojosa and Thomas J. Irmiter**

33. United Fires moves to exclude the testimony of Robert Hinojosa and Thomas J. Irmiter under Rule 702. Both Hinojosa and Irmiter signed the same reports, one on each of the two properties at issue. Exhibits "B" However, only Hinojosa stamped or sealed the report. Exhibit "C" at TRI INV000617 and TRI INV000753.

34. As an initial matter, it appears that only Hinojosa physically inspected the properties. However, the reports do not indicate which portions or opinions were provided by Hinojosa and which were provided by Irmiter. Accordingly, United Fire respectfully moves to exclude both Hinojosa's testimony and Irmiter's testimony on the same grounds.

- **Ground for Exclusion: Hinojosa and Irmiter's definition of "damage" is not applicable**

35. Hinojosa's and Irmiter's reports both define damage as follows:

> Recognized definitions of damage state that any "disadvantage or loss of value, use and longevity" constitutes damage. RJH and FBS maintain that the hail has certainly devalued the roof system and the worth of the building. The roof system's longevity is in question after the hail storm. The "pockets" created by the hail impacted dents will allow water to stand on the roof, and this could be very detrimental to the panel surface in time.

Exhibit "B" at TRI INV 000615 and Exhibit "C" at TRI INV 000752.

Both reports conclude

> RJH and FBS believe that there is sufficient evidence that the hail from the storm event likely caused the kind of damage to warrant the replacement of all roofs, gutters and downspouts. The observed damages most definitely have a monetary effect on the property value(s) to the owner in future discussions and planning.

*Id*.

36. However, under the clear, unambiguous terms of the Cosmetic Damage Exclusion, for there to be coverage under the Policy, the hail must cause such damage to the metal roof such that water penetrates through the hail damage, or the hail must damage the metal panels such that the roof system cannot perform its ability to keep out elements over an extended period of time. Any other alleged hail "damage" that does not satisfy one or both of these requirements is excluded from coverage by the Cosmetic Damage Exclusion.

37. Hinojosa and Irmiter conclude roofs were damaged because the hail had "a

monetary effect on the property value(s) to the owner in future discussions and planning." *Id*. That is, Hinojosa and Irmiter based their conclusions that the roofs have been damaged by hail on a definition of "damage", not found in the Policy, but based on something that they do not cite or attach to their reports.

38.   Under the insurance Policy at issue, hail is covered only if the exception to the exclusion applies. Hinojosa's and Irmiter's broad definition of "damage" is not applicable to this matter. Hinojosa's and Irmiter's opinion that hail damaged the roofs of the properties, based on an improper definition of "damage", is irrelevant and creates a high risk of juror confusion and prejudice. Accordingly, Hinojosa's and Irmiter's opinions and conclusions concerning hail "damage" must be excluded.

- **Grounds for Exclusion: Conclusory opinions**

39.   Hinojosa and Irmiter make numerous conclusory statements that the roofs were damaged by wind and hail but do not explain how or why wind or hail damaged the roofs. Additionally, neither distinguish between the hail event of May 2017 and the numerous wind and hail events occurring "in the vicinity of the propert[ies]" previously, including the 2016 wind and hail events reported in Webb County, Texas. [4] Neither do Hinojosa or Irmiter set forth why the May 2017 event, and only the May 2017 event, caused the "damage" which they opine about.

40.   Further, Hinojosa and Irmiter do not distinguish between alleged hail and wind damage and other sources of damage such as wear and tear, defective or lack of maintenance, and mechanical damage (including foot crimping).

- **Ground for Exclusion: Lack of Any Scientific Basis for Opinions.**

41.   Arguably, the closest Hinojosa and Irmiter come to a non-conclusory opinion is the

---

[4] See Exhibit "E" to United Fire's Motion for Summary Judgment filed on July 12, 2019, at p. 3.

14

following statement:

> Damage to the metal roof panels was by creating indentations that collect pollutants, sediment and water, causing premature corrosion to occur at the impact locations.

*Id* at. TRI INV000615 and TRI INV000751

42. However, there is no scientific basis given by Hinojosa and Irmiter for this statement. Their reports do not provide the underlying basis for their conclusions that "premature corrosion" will occur at impact locations.

43. Additionally, Hinojosa's and Irmiter's theory that premature corrosion occurs in hail indents to coated sheet metal are supported by a single white paper, presentation, or other peer-reviewed process.

44. Other published theories on hail damage to roofs are based on physical testing, conducted in a controlled laboratory environment, with observable and measurable results on actual roofing materials. For example, UL 2218 by Underwriters Laboratories, Inc. sets the standard for testing of Impact Resistance of Prepared Roof Covering Materials, especially metal roof panels. Exhibit "D". Neither Hinojosa nor Irmiter, however, conducted any physical testing of hail impacts on any type of roofing materials, much less the metal panels at issue. In other words, Hinojosa and Irmiter broadly conclude that hail dents "collect pollutants, sediment and water" resulting in premature corrosion without any basis in testing or laboratory analysis. They do not provide a timeline for such "premature corrosion", the mechanism of how the coating material interacts with the elements resulting in "premature corrosion", how large an area needs to be exposed before corrosion sets in, or why hail indents will corrode more than other indentations and bends in the metal roof panels created by such sources as foot traffic, cut edges, forming of the support ribs and standing seams in manufacturing.

45. Finally, there is no evidence that Hinojosa's and Irmiter's theories and methods are generally accepted in the relevant scientific community. Nowhere do they indicate that their theories of premature corrosion and methods have been presented to such relevant scientific communities as meteorologist, engineers, manufacturers, or others conducting measurements, research and testing in hailstone resistance and damage.

46. From all appearances, Hinojosa's and Irmiter's theories and methods appear designed primarily to support attorneys and public adjusters representing insureds, and to support claims and lawsuits against insurance companies for alleged hail damage to roofs. This is not science and Hinojosa's and Irmiter's *ipse dixit* opinions on hail "damage" must be excluded from the jury.

47. For coverage to exists for hail to metal roof components, the hail must immediately cause openings such that water penetrates through the metal roof[5] or the hail results in the failure of the roof covering to perform its intended function to keep out elements over an extended period of time, Hinojosa and Irmiter must be able to show scientifically the details of how and why hail indents and "pollutants, sediment and water" will cause the panels to cease being able to keep out the elements over an extended period of time. This they fail to do and, accordingly, their testimony must be excluded.

## **CONCLUSION AND PRAYER**

WHEREFORE, Defendant, United Fire & Casualty Company, respectfully prays that this Court grant its Motion to Exclude Testimony of Plaintiff's Expert Stephen L. Strzelec, Robert Hinojosa, and Thomas J. Irmiter and order that Stephen L. Strzelec, Robert Hinojosa, and Thomas

---

[5] Hinojosa and Irmiter's reports claim that the roofs leak after rain events but they make no effort to trace the source of those leaks and whether or not those leaks are the result of hail or wind, from which wind or hail event, or that they were solely caused by the May 2017 event at issue.

J. Irmiter not be permitted to testify before the jury concerning their theories, conclusions, and opinions as expressed in their reports. United Fire further requests that this Court grant it such other and further relief to which United Fire may be justly entitled.

                              Respectfully submitted,

                              GAUNTT KOEN BINNEY & KIDD, LLP

                              By: _/s/ David P. Andis_____
                                    David P. Andis
                                    State Bar No. 00793265
                                    Southern District Federal ID: 19480
                                    Attorney in Charge
                              25700 I-45 North, Suite 130
                              Spring, Texas 77386
                              Telephone:     281-367-6555
                              Facsimile:      281-367-3705
                              Email: david.andis@gkbklaw.com

Of Counsel for Defendant:

    J. Chad Gauntt
    State Bar No. 07765990
    Southern District Federal ID: 14135
    Gauntt Koen Binney & Kidd, LLP
    25700 I-45 North, Suite 130
    Spring, Texas 77386
    Telephone:     281-367-6555
    Facsimile:      281-367-3705
    Email: chad.gauntt@gkbklaw.com

Of Counsel for Defendant:

    Marcel C. Notzon, III
    State Bar No. 15119001
    The Notzon Law Firm
    6999 McPherson Rd., Suite 325
    Laredo, Texas  78041
    Telephone:     956-717-1961
    Facsimile:      959-717-2789

E-Mail:  mcn@notzonlawfirm.com

## CERTIFICATE OF SERVICE

This certifies that on the 12th day of July, 2019, the above-referenced document was served on the following individuals and/or parties to this lawsuit via electronically, facsimile, email, certified mail, return receipt requested and/or first class mail:

Jeffrey L. Raizner (SBN: 00784806)
Andrew P. Slania (SBN: 24056338)
Amy B. Hargis (SBN: 24078630)
Ben Wickert (SBN:  24066290)
Raizner Slania, LLP
2402 Dunlavy Street
Houston, TX  77006
Telephone:     713-554-9099
Facsimile:      713-554-9098
Email: efile@raiznerlaw.com
          jraizner@raiznerlaw.com
          aslania@raiznerlaw.com
          ahargis@raiznerlaw.com
          bwickert@raiznerlaw.com
Attorney for Plaintiff

　　　　　　　　　　　　　　　　　　　　　　  /s/ David P. Andis
　　　　　　　　　　　　　　　　　　　　　　　　David Andis