IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| TRI INVESTMENTS, INC. | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:18-cv-00116 |
| | § | |
| UNITED FIRE & CASUALTY COMPANY | § | |
| *Defendant.* | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant United Fire & Casualty Company (hereinafter "United Fire"), and files this its Motion for Summary Judgment concerning the claims of Plaintiff, Tri Investments, Inc. (hereinafter "Plaintiff"), and in support thereof, would respectfully show this Honorable Court the following[1]:

### I.    SUMMARY OF THE ARGUMENT

1.    United Fire is entitled to summary judgment on Plaintiff's breach of contract claims because Plaintiff's claim is excluded by the Cosmetic Damage Exclusion of the Policy at issue.

2.    Plaintiff is unable to allocate between alleged damaged caused by the May 2017 storm and prior storms, as well as other excluded causes of loss or damage.

3.    Because Plaintiff cannot prevail on its breach of contract claim, Plaintiff cannot prevail on its bad faith and statutory claims.

4.    Further, there is a reasonable basis for United Fire's denial of Plaintiff's claim.

---

[1] At the time of the filing of this Motion, Defendant's Opposed Motion to Compel Appraisal and Abate Case Pending Completion of Appraisal (Document No. 30) was pending ruling by the Court. Due to the deadline for filing Dispositive Motions and Motions to Exclude or Limit Expert Testimony set by the Court, Defendant files the instant motion at this time in order to meet the deadline in the Scheduling Order. (Document No. 13). Defendant does not intend this Motion to substantially invoke the jurisdiction of the Court to the exclusion of appraisal

Accordingly, at most, this is a bona fide dispute concerning coverage, and Plaintiff's bad faith and statutory claims must be dismissed.

5.      There is no evidence that United Fire violated sections 541.002, 541.060, 541.061, or 542 of the Texas Insurance Code.

6.      Finally, there is no evidence that United Fire committed a "knowing" violation of the Texas Insurance Code or the Texas Deceptive Trade Practices Act.

### Summary Judgment Evidence

7.       In support of its Motion for Summary Judgment, United Fire submits the following exhibits and tenders them into evidence:

Exhibit "A" - Certified copy of United Fire Insurance Policy Number 85318342;

Exhibit "B" - Cosmetic Damage Exclusion;

Exhibit "C" – United Fire letter dated 9/10/2017 concerning Logistic property;

Exhibit "D" – United Fire letter dated 9/11/2017 concerning Flecha property;

Exhibit "E" – Report of BSC Forensics dated July 27, 2017 concerning the property located at 301 Flecha Lane, Laredo, Texas;

Exhibit "F" - Report of BSC Forensics dated July 27, 2017 concerning the property located at 442 Logistics Dr., Laredo, Texas;

Exhibit "G" - Report of EPI Materials Testing Group;

### II.      STATEMENT OF FACTS

8.      Defendant issued insurance policy number 85318342 with effective dates of April 15, 2017 to April 15, 2018 (the "Policy") (Document No. 4-1; Exhibit "A"). The Policy provides insurance coverage, subject to the Policy's terms and conditions, for covered losses occurring to two properties: 442 Logistics and 301 Flecha Ln. in Laredo, Texas occurring during the policy period. *Id*.

9.      The Policy contains endorsement CP 70 66 03 05 titled "Exclusion – Cosmetic or Appearance Loss or Damage" which states,

**EXCLUSION – COSMETIC OR APPEARANCE LOSS OR DAMAGE**
**CP 70 66 03 05**

\* \* \*

The following language is added to B. EXCLUSIONS in the Causes of Loss – Special Form:

**5.      Cosmetic or Appearance Loss or Damage**

We will not pay for loss or damage caused by the peril of hail that alters the physical appearance of any part of any roof covering made of metal but does not result in damage that allows the penetration of water through the roof covering **or does not result in the failure of the roof covering to perform its intended function** to keep out elements over an extended period of time. This exclusion applies to roof coverings including the roofing material exposed to weather, its underlayments applied for moisture protection and all flashings required in application of the roof covering.

Hail damage to roof coverings that results in damage that will allow the penetration of water through the roof covering **or that results in the failure of the roof covering to perform its intended function** to keep out elements over an extended period of time is not subject to this exclusion.

Exhibit "B" (hereafter the "Cosmetic Damage Exclusion")

10.      Plaintiff alleges that both properties sustained covered losses during a wind and hail event occurring on May 21, 2017 (Document No. 1). After investigating Plaintiff's insurance claim, United Fire paid insurance benefits totaling approximately $32,000.00 (after applicable deductibles) for covered damage to the properties. Exhibit "C" and Exhibit "D". The remainder of Plaintiff's claim, specifically damage to the metal roof panels, was denied as excluded under various Policy exclusions, including the Cosmetic Damage Exclusion. *Id*.

11.      United Fire's decision on the claim was based on reports of BSC Forensics prepared after on-site engineering inspections of both properties. Exhibit "E" and Exhibit "F". According

3

to BSC's findings, the hail impacts to the metal roofs of both properties were cosmetic in nature. *Id*.

12.     Subsequently, representative metal roof panels were removed from both properties and sent to EPI Materials Testing Group ("EPI") for metallurgical analysis. Exhibit "G". EPI's metallurgical analysis concluded,

> Metallurgical evaluation of the indentions revealed that the coating remained intact, there were no holes or discontinuities through to the steel substrate and no evidence of corrosion of the steel substrate.
>
> …
>
> There was no indication of corrosion or damage to the substrate steel that would prevent the roof panels from functioning as intended, i.e. to keep out elements and not allow the penetration of water. The metal coating on the roof panels was determined to be Galvalume. Galvalume was developed to combine the long term atmospheric corrosion resistance of Al with the sacrificial characteristics of Zn or galvanized coatings. The indentions examined would not prevent the Galvalume from continued corrosion protection of the roof panels and the roof panels as examined would continue to serve their intended purpose.

Exhibit "G" at page 3 of 18.

13.     In this lawsuit, Plaintiff has asserted causes of action against United Fire for breach of contract, violations of the Texas Insurance Code, the Texas Deceptive Trade Practices Act, common law bad faith, and that United Fire acted "knowingly".  (Document No. 1). United Fire moves for summary judgment on all of Plaintiff's claims, including its contract, statutory, and common law extra-contractual claims.

### III.     ARGUMENT AND AUTHORITIES

**A.     Legal Standard**

14.      Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

15.    For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

16.    If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

17.     In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)).

**B.      Grounds for Summary Judgment: Plaintiff's Breach of Contract Claim**

18.     Under Texas law, a court must interpret the insurance contract using the ordinary rules for contract interpretation. *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 611-612 (S.D. Tex. 2015). The insured has the initial burden of proving coverage. *Id*.

at 612. If so, the insurer then bears the burden of proving that a policy exclusion bars coverage. *Id*. If the insurer is successful, then the burden shifts back to the insured to prove that the claim at issue falls under an exception to the exclusion. *Id*.

19.     The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

**-      Cosmetic Damage Exclusion Applies to Exclude Plaintiff's Claim**

20.     United Fire is entitled to summary judgment on the basis that the loss is excluded under the language of the Cosmetic Damage Exclusion. Exhibit "B".

21.     For there to be coverage under the Policy, the hail must cause such damage to the metal roof that the damage allows water to penetrate through the hail damage. *Id*. If there are no such penetrations, the only other policy coverage that is afforded is if the hail "result in the failure of the roof covering to perform its intended function to keep out elements over an extended period of time." *Id*. Any alleged hail "damage" that does not satisfy these express requirements is excluded from coverage by the Cosmetic Damage Exclusion.

22.     The only legally admissible sources of causation evidence are United Fire's experts, Matt Spiekerman of BSC Forensics and John Hadjioannou of EPI. Both Spiekerman and Hadjioannou are licensed professional engineers in the State of Texas.

23.     Spiekerman personally inspected the buildings and their roofing systems shortly after the claim was filed. Exhibit "E" at p. 1 and Exhibit "F" at p. 1. Hadjioannou examined representative panels from the roofs of the properties metallurgically. Exhibit "G". Plaintiff

has not retained a metallurgist nor conducted metallurgical examination of the metal panels.

24.    In this matter, there is no evidence of any hail created damage that allowed water to penetrate through the hail damage.

25.    Further, the uncontroverted evidence is that there is no damage to the roof panels such that the roofing system cannot perform its intended function over an extended period of time.[2]

26.    According to Spiekerman

> BSC inspected the subject panels for evidence of hail damage. Generally, hail damage to metal panels is characterized by a roughly circular indentation with a rupture in the metal at the impact location, a disengaged lap, or a depression at a fastener that would reduce the water-shedding capability of the roof. Factory-applied coatings on metal panels are not generally damaged by hail impacts, as the panels are cold-rolled in the factory with the pre-applied coating. However, coatings applied after manufacturing such as paint or sealant could be susceptible to impact damage from hail. Globally, hail impact patterns on a roof surface are randomly distributed (not in concentrated groupings) across the field(s). Moreover, hail typically falls at an angle, depending on the directional winds during the storm, and as such, hail impacts are likely to be more severe on fields that are perpendicular to the fall angle or walls that are exposed directly to hail fall. Patterned roughly circular indentations in metal panels that are not accompanied by ruptures within the metal, disengaged laps, depressions at fasteners or damaged coatings would not reduce the water-shedding capability or the expected life of metal panels, and as such, are considered cosmetic.

Exhibit "E" and "F" at p. 5.

---

[2] Plaintiff designated Robert Hinojosa and Thomas J. Irmiter as testifying experts on causation. Defendant as moved to exclude their opinions on various grounds under Rule 402. Document No. 44. Although Hinojosa and Irmiter opine that water pockets in the hail dents "could be very detrimental to the panel surface in time" and "could conceivably be very detrimental to the panel surface in time", they do not identify any existing corrosion or offer any scientifically reliable reason to support a conclusion that the panels will fail to perform their intended function to keep out the elements over an extended period of time. Document No. 44-2 at TRI INV000615, and Document No. 44-3 at TRI INV000752.

27.     Concerning the Flecha property, Spiekerman found "no patterned indentations with ruptures or disengaged laps consistent with hail damage." *Id*. With respect to the Logistics property

> BSC's inspection revealed patterned spatter marks with occasional indentations (cosmetic) at metal roof panels and flashing consistent with recent hail impacts. BSC observed no patterned indentations with ruptures or disengaged laps consistent with hail damage. BSC's inspection revealed cosmetic dents and no damage that would allow the penetration of water through the roof covering or damage that would result in failure of the roof covering to perform its intended function, to keep out elements over an extended period of time.

Exhibit "F" at p. 6.

28.     The metallurgical examination of representative panels from both buildings by John Hadjioannou revealed "no holes or discontinuities through to the steel substrate and no evidence of corrosion of the steel substrate" therefore, "no indication of corrosion or damage to the substrate steel that would prevent the roof panels from functioning as intended". Exhibit "G" at page 3 of 18.

29.     Not only were there no hail indentations to the Flecha property caused by the May 2017 event, but the hail indentations that were discovered on the metal roofing systems of both buildings were cosmetic in nature. That is, although there are dents to some of the metal roof panels, the hail dents did not result in the failure of the roof coverings to perform their intended function to keep out elements over an extended period of time. Under the terms of the Policy, there is no coverage for this cosmetic damage.

30.     As such, the undisputed evidence is that the alleged hail damage at issue is excluded by the Cosmetic Damage Exclusion of the Policy. Therefore, Plaintiff cannot

9

prevail on its breach of contract claim and summary judgment must be granted in favor of United Fire.

- **Plaintiff Cannot Allocate Under the Doctrine of Concurrent Causation**

31.     Texas recognizes the doctrine of concurrent causes, so that when "covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s)." *Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010) (quoting *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 302-03 (Tex. App.—San Antonio 1999, review denied)). As such, "[f]ailure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim." *Id.* (citing *Wallis*, 2 S.W.3d at 304). The Texas Court of Appeals held in *Wallis* that "[b]ecause an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." 2 S.W.3d at 303.

32.     Therefore, Plaintiff has the burden to prove that a covered loss occurred within the policy's period and at no other time. If there are multiple contributing causes, Plaintiff must allocate between covered and excluded causes of loss. The policy at issue has effective dates of April 15, 2017 to April 15, 2018. Exhibit "A" (form CP 70 01 12 92).

33.     United Fire has tendered evidence that more than one storm has occurred in Webb County, Texas other than the May 2017 storm that Plaintiff seeks insurance benefits for. In particular, there were at least five hail and/or wind events in Webb County reported in 2016 and early 2017 alone – prior to the storm at issue. Exhibit "E" at p. 3. There is no evidence from Plaintiff distinguishing between the alleged hail and/or wind damage from

10

the May 2017 event from the other reported storms in Webb County prior to the storm at issue.

34.     Additionally, as reported by BSC Forensics, there are other issues with the buildings that are not storm related, such as:

**Flecha** (Exhibit "E" at pp. 9 - 10).

- Mechanical damage;

- Wear and tear (aging); and,

- Installation deficiency.

**Logistics** (Exhibit "F" at pp. 8-9)

- Mechanical damage;

- Wear and tear (thermal cycling); and,

- Installation deficiency.

The Policy at issue specifically excludes these causes of loss or damage.[3]

35.     In this matter, there is no evidence allocating Plaintiff's alleged damage between the hail and/or wind event of May 2017 as distinct from other, excluded, causes of roof damage, such as construction and maintenance defects or wind and/or hail events occurring prior to the Policy's effective dates. *See Hamilton Properties v. The American Insurance Company*, No. CV-5046-B, 2014 U.S. Dist. LEXIS 91882 at *21 (N.D.Tex. July 7,2014) (aff'd 643 Fed. Appx. 437 (5th Cir. 2016)) (insured failed to make showing on summary judgment by which they could allocate damages between the storm at issue and other causes).

---

[3] Exhibit "A" at policy form CP 10 30 10 12 (Causes of Loss – Special Form) provisions B. Exclusions, 2(d) and 3(c)(2)(3)(4).

36.     Because Plaintiff bears the burden of proof to segregate the damage attributable solely to the alleged wind and/or hail damage on May 21, 2017 from the other sources of alleged damage, including other weather events, Plaintiff's failure to legally allocate between covered and excluded causes of loss is fatal to Plaintiff's breach of contract cause of action. Therefore, Plaintiff's claim for breach of contact against United Fire must be dismissed.

**C.      Grounds for Summary Judgment: Plaintiff's Bad Faith and Statutory Claims**

-       **Extra-Contractual Claims Fail When No Breach of Contract**

37.     Absent a breach of contract, the insured cannot maintain a common law bad faith claim in Texas. In *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627 (Tex. 1996), the Texas Supreme Court recognized that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 368 (5th Cir. Jan. 24, 2012) (quoting *Akin*, 927 S.W.2d 627, 629 (Tex. 1996)). The Texas Supreme Court recently reiterated this general rule in *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018). Similarly, under the general rule, "an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy." *Id*. at 490. The only recognized exceptions to this rule are if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim," or fails "to timely investigate the insured's claim." *Id*. Quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).

38.     Relatedly, under Texas law, extra-contractual tort claims brought under the Texas Insurance Code and the DTPA require the same predicate for recovery as a common law

12

claim for bad faith. *See Hudgens v. Allstate Tex. Lloyd's*, 2012 U.S. Dist. LEXIS 97446, at *15 (S.D. Tex. July 13, 2012) and *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 518 (Tex. 1998)). In Texas, the common law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under Chapter 541 of the Texas Insurance Code; both claims share the same predicate for recovery. *Tex. Mut. Ins. Co. v. Sara Child Care Center, Inc.*, 324 S.W.3d 305, 317 (Tex. App. — El Paso 2010, pet. denied); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)).

39.     In the instant case, in the event the Court grants United Fire's summary judgment as to Plaintiff's breach of contract claim, it must also grant summary judgment on Plaintiff's bad faith claim and claim for violation of the Texas Insurance Code and the Texas Deceptive Trade Practices Act.[4]

-     **Bona Fide Coverage Dispute is Not Bad Faith**

40.     An insurer is liable for breach of the duty of good faith and fair dealing "if the insurer knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). A bona fide coverage dispute, standing alone, cannot alone demonstrate bad faith. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). An insurer is not liable for an erroneous denial of a claim as long as a reasonable basis for denial of the claim exists. *Republic Ins. Co. v. Stoker*, 903 S.W.2d at 340.

41.     An insured cannot establish a claim for bad faith without offering evidence that the insurer's liability on the claim had become reasonably clear, or that there was no reasonable

---

[4] Plaintiff's DTPA claims are brought through the Texas Insurance Code. Document No. 1 at p. 17. Accordingly, if there are no Insurance Code violations there are no DTPA violations.

basis for denying the claim. *Tesoro Ref. & Mktg. Co. LLC v. Nat'l Union Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 45168 (W.D. Tex. Apr. 7, 2015) (*citing Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198 (Tex. 1998)).

42.     After United Fire's adjuster inspected the properties at issue, and following receipt of the reports of Spiekerman, United Fire denied Plaintiff's claim because there was no evidence of wind damage to the property. Further, the claims of hail damage to the metal roofing were excluded by the Cosmetic Damage Exclusion. Additionally, other sources of damage to Plaintiff's properties, were caused by excluded causes such as wear and tear and defective construction, maintenance issues. Subsequent metallurgical testing confirmed the decision of United Fire's adjuster.

43.     However, even were BSC incorrect about its conclusions, at worst, this is a bona fide dispute about what alleged damage was caused by wind and/or hail and the amount of that damage, if any. Plaintiff has never attempted to allocate between excluded and covered causes of loss. There is simply no evidence that United Fire acted in bad faith or that United Fire violated any provision of the Texas Insurance Code, with respect to Plaintiff's claim.

-       **Plaintiff Has No Evidence of Its Extra-Contractual Claims.**

44.     Plaintiff has no evidence that United Fire failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim. Plaintiff has no evidence that United Fire refused to pay Plaintiff's claim without first conducting a reasonable investigation as there is no evidence that United Fire's liability under the Policy ever became reasonably clear. *Id*.

45.     Plaintiff has no evidence that United Fire violated sections 541.060 and/or 541.061 of the Texas Insurance Code as alleged by Plaintiff. There is no evidence that United Fire

misrepresented the insurance policy under 541.002 of the Texas Insurance Code as alleged by Plaintiff. Nor is there any evidence that United Fire violated section 52 of the Texas Insurance Code (known as the Prompt Payment of Claims Act).

46.     Accordingly, in the event the Court concludes a fact question exists as to Plaintiff's breach of contract claims, United Fire respectfully requests that the Court find that United Fire's handling of Plaintiff's claim was not in bad faith or in violation of the Texas Insurance Code, and grant summary judgment in favor of United Fire as to Plaintiff's causes of action for bad faith and violation of section 541 and 542 of the Texas Insurance Code.

-       **No "Knowing" Violation of the Texas Insurance Code**

47.     United Fire also respectfully requests that the Court dismiss Plaintiff's claim that United Fire allegedly acted knowingly as that term is used in the Texas Insurance Code.

> "Knowingly" means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim for damages is based. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness.

Tex. Ins. Code. 542.002(1)

48.     Explaining this definition, the Texas Supreme Court has recognized the obvious: "'Actual awareness' does not mean merely that a person knows what he is doing; rather, it means that a person knows what he is doing is false, deceptive, or unfair. In other words, a person must think to himself at some point, 'Yes, I know this is false, deceptive, or unfair to [the other person], but I am going to do it anyway.'" *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51, 53-54 (Tex. 1998) (per curiam).

49.     Not only is there no evidence that United Fire violated any provision of the Texas Insurance Code, even were there such evidence, there is no evidence that United Fire did

so "knowingly" as defined in the Code. As set forth herein, there was no breach of contract, but even were there, this is a bona fide dispute over coverage that does not rise to the level of an Insurance Code violation or bad faith. Accordingly, Plaintiff's allegation that United Fire committed a "knowing" violation of the Texas Insurance Code must be dismissed.

## IV.    CONCLUSION AND PRAYER

WHEREFORE, Defendant, United Fire & Casualty Company, respectfully prays that this Court grant its Motion for Summary Judgment as to all of Plaintiff Tri Investments, Inc.'s claims and causes of action against United Fire. United Fire further requests that this Court enter a final judgment that Plaintiff nothing against United Fire, and for such other and further relief to which United Fire may justly be entitled.

Respectfully submitted,

GAUNTT KOEN BINNEY & KIDD, LLP


By:  /s/ David P. Andis
       David P. Andis
       State Bar No. 00793265
       Southern District Federal ID: 19480
       Attorney in Charge
25700 I-45 North, Suite 130
Spring, Texas 77386
Telephone:    281-367-6555
Facsimile:    281-367-3705
Email: david.andis@gkbklaw.com

16

Of Counsel for Defendant:

    J. Chad Gauntt
    State Bar No. 07765990
    Southern District Federal ID: 14135
    Gauntt Koen Binney & Kidd, LLP
    25700 I-45 North, Suite 130
    Spring, Texas 77386
    Telephone:    281-367-6555
    Facsimile:    281-367-3705
    Email: chad.gauntt@gkbklaw.com

Of Counsel for Defendant:

    Marcel C. Notzon, III
    State Bar No. 15119001
    The Notzon Law Firm
    6999 McPherson Rd., Suite 325
    Laredo, Texas  78041
    Telephone:    956-717-1961
    Facsimile:    959-717-2789
    E-Mail: mcn@notzonlawfirm.com

**CERTIFICATE OF SERVICE**

This certifies that on the 12th day of July, 2019, the above-referenced document was served on the following individuals and/or parties to this lawsuit via electronically, facsimile, email, certified mail, return receipt requested and/or first class mail:

Jeffrey L. Raizner (SBN: 00784806)
Andrew P. Slania (SBN: 24056338)
Amy B. Hargis (SBN: 24078630)
Ben Wickert (SBN:  24066290)
Raizner Slania, LLP
2402 Dunlavy Street
Houston, TX  77006
Telephone:     713-554-9099
Facsimile:     713-554-9098
Email: efile@raiznerlaw.com
         jraizner@raiznerlaw.com
         aslania@raiznerlaw.com
         ahargis@raiznerlaw.com
         bwickert@raiznerlaw.com

Attorney for Plaintiff

_/s/ David P. Andis_____
                David Andis

18